OPINION
{¶ 1} Appellant Patricia Colaner appeals a judgment of the Tuscarawas County Common Pleas Court, Juvenile Division, granting the Tuscarawas County Job and Family Services (JFS) permanent custody of her minor children, Maleah, (date of birth: 8-3-99), and Charles Ethan (date of birth: 8-07-00):
 ASSIGNMENTS OF ERROR {¶ 2} ASSIGNMENT OF ERROR NUMBER ONE
 A THOROUGH REVIEW OF THE RECORD IN THIS CASE REVEALS THE EVIDENCE DOES NOT JUSTIFY A GRANTING OF PERMANENT CUSTODY OF MALEAH AND CHARLES COLANER TO THE TUSCARAWAS COUNTY JOB AND FAMILY SERVICES.
 {¶ 3} ASSIGNMENT OF ERROR NUMBER TWO
 THE GUARDIAN AD LITEM FAILED TO MAKE AN INDEPENDENT INVESTIGATION AND HER REPORT THEREFORE WAS PREJUDICIAL TO APPELLANT.
 {¶ 4} ASSIGNMENT OF ERROR NUMBER THREE
 THE JUDGMENT OF THE TRIAL COURT IN GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 {¶ 5} ASSIGNMENT OF ERROR NUMBER FOUR
 THE TRIAL COURT ERRED BY CONCLUDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD(REN) OF THE APPELLANT(S) TO BE PLACED IN THE CUSTODY OF THE TUSCARAWAS COUNTY JOBS AND FAMILY SERVICE.
 {¶ 6} ASSIGNMENT OF ERROR NUMBER FIVE
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS DECISION GRANTING IN A PERMANENT CUSTODY MOTION WITHOUT CONSIDERING WISHES OF THE CHILD(REN).
 {¶ 7} ASSIGNMENT OF ERROR NUMBER SIX
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY AND ABUSED ITS DISCRETION IN SUSTAINING THE MOTION FOR PERMANENT CUSTODY OF THE TUSCARAWAS COUNTY JOBS AND FAMILY SERVICES THAT THE PROCEDURES OF OHIO REVISED CODE 2151.414 (D)
{¶ 8} Maleah and Charles Ethan Colaner are the natural children of appellant and Charles Eric Colaner. On January 31, 2001, the court issued an ex parte order removing the children from the custody of their parents. Following a shelter care hearing on February 1, 2001, the children were returned to the custody of appellant under an order of protective supervision. Domestic violence between appellant and her husband was an on-going concern at the time, and the court ordered that Charles not reside in the home with the children. He was to have only supervised visitation with the children. Telephone contact was permitted between appellant and Charles to discuss the welfare of the children, but no other contact was permitted between Charles and appellant and the children. The court later lifted the no contact order only to allow contact between appellant and Charles outside the presence of the children.
{¶ 9} At the adjudicatory hearing on March 13, 2001, the parents admitted that the children were dependent, and the court entered a finding of dependency. A separate dispositional hearing was waived, and a case plan was adopted. All previous orders of the court concerning visitation, placement, and contact with Charles were continued as previously ordered.
{¶ 10} On April 2, 2001, appellee filed a motion to show cause against each parent for violation of the no contact order. On the same day, a shelter-care hearing was held, as on March 30, appellant voluntarily contacted appellee and requested that the children be removed from her home, as she was unable to care for them. The children were then placed in the temporary custody of appellee, where they remained up through the date of the permanent custody determination.
{¶ 11} The major concerns for the family were domestic violence, drug and alcohol abuse, unstable housing, financial instability, adherence to court orders, psychological problems, anger management problems and the need for parent education. The case plan required marriage counseling, psychological evaluations with follow-up counseling for both parents, domestic violence assessments with follow-up counseling, parent education, and drug and alcohol assessments with follow-up recommendations.
{¶ 12} On May 30, 2001, after previously failing to attend a show-cause hearing on the motion for contempt for failing to obey the no contact order, both parents admitted the contempt. Appellant and Charles were each sentenced to 15 days in the Tuscarawas County Jail, all of which was suspended to provide the parents an opportunity to purge. The court ordered the parents to comply with all court orders, refrain from alcohol or drug use, report for random drug screens within one-half hour of any request by appellee, and immediately report for a drug screen that day. As of August 1, 2001, the parents had failed to purge themselves of the contempt due to continued drug use, and the matter of imposition of the jail sentence was continued by the court.
{¶ 13} In September of 2001, Charles Eric Colaner was involved in motorcycle accident. He sustained severe head injuries, and has remained in a coma to the present time. He is not expected to recover.
{¶ 14} Up through the date of the motorcycle accident, the parents made limited progress on the case plan. Domestic violence continued between them. At one point, Charles Eric was hospitalized with a ruptured spleen from appellant hitting him with a curtain rod. At no time did the parents continuously maintain negative drug screens.
{¶ 15} Appellant completed a psychological assessment, domestic violence assessment, some counseling, and parent education. She had failed to find stable housing, remained unemployed, violated no contact orders of the court, and did not resolve the domestic violence problems in the home. There was evidence that appellant tampered with drug tests, and while sporadic drug screens were submitted to the court, no consistent history of abstinence from drugs had been established. Her psychological assessment indicated a diagnosis of anti-social personality disorder, characterized by angry, aggressive behavior toward others, impulsivity, and criminal behavior with a low tolerance for frustration. These symptoms increase with substance abuse.
{¶ 16} The permanent custody motion was filed by appellee on September 4, 2001. Following the filing of this motion, appellant initiated some counseling and some progress on the case plan. However, her progress was limited, and her prognosis was guarded due to continued drug use.
{¶ 17} Following a hearing in the Tuscarawas County Common Pleas Court, Juvenile Division, the court found that the children could not be placed with either parent within a reasonable time. The court found that despite reasonable efforts by appellee to remedy the problems causing removal of the children, both parents failed over a six month period to remedy the conditions causing removal. The court further found that the parents could not provide an adequate home for the children within one year of the day of the hearing. The court therefore terminated all parental rights, and granted permanent custody of the children to appellee.
 I, III, IV
{¶ 18} Appellant's first, third, and fourth assignments of error all argue that the judgment of the court granting permanent custody to appellee is against the manifest weight of the evidence.
{¶ 19} A judgment supported by competent, credible evidence going to all of the essential elements will not be reversed as against the manifest weight of the evidence. C.E. Morris Company v. FoleyConstruction Company (1978), 54 Ohio St.2d 279.
{¶ 20} Beth Bertine, the on-going case manager, testified regarding continuing concerns within the Colaner family. The elements on the case plan included obtaining and maintaining stable housing, completion of a psychological evaluation and follow-up counseling, completion of a domestic violence assessment with follow-up counseling, completion of a drug and alcohol assessment and follow-up counseling, and completion of parent education.
{¶ 21} With regard to stable housing, appellant had lived for a number of months in the home of her parents, who had previously been determined by the court to be an inappropriate placement for the children. A psychological evaluation had been completed. Dr. Gabriel L. Elhage Bourtris testified that he diagnosed appellant with anti-social personality traits. He testified that a person suffering from this diagnosis would have difficulty establishing the skills necessary to be an effective parent. William Buckwald, a counselor who treated appellant, testified that during the assessment process, appellant missed a number of appointments, but had later been more consistent with her attendance. While he testified that he believed she had reached the maximum therapeutic benefit from therapy, during the course of her treatment, appellant disclosed to him that her use of illegal substances impacted her aggressive behavior.
{¶ 22} While appellant completed the domestic violence assessment, domestic violence issues continued up through the time of appellant's husband's motorcycle accident. Ms. Bertine testified that at one time, Mr. Colaner was hospitalized for a number of days, which was reported to have been from a fall of the roof. However, he later told Ms. Bertine that the hospitalization resulted from appellant hitting him with a shower curtain rod. Both parents had reported on-going issues of domestic violence between them to Ms. Bertine. Debra Whitney, an employee of appellee who was called to testify by appellant, provided further indications of violent behavior between the parents. She testified that during a parent-education session, appellant threatened physical violence against her husband.
{¶ 23} While appellant completed the drug assessment, during the purge period on the contempt charge, appellant had additional positive drug screens. Terri Cook, a drug and alcohol counselor who worked with appellant, testified that she saw appellant for a total of six appointments. She testified that she had conducted four random drug screens, out of which two were positive. Further, appellant did not begin treatment until September 26, 2001, after the permanent custody motion was filed. Ms. Cook testified that appellant's prognosis for long-term recovery would be guarded, as it was too early in the treatment process to have a definitive prognosis.
{¶ 24} Appellant herself testified that she failed to finish the court ordered case plan, having gotten wrapped up in her life, her husband's life, and their use of marijuana. She admitted that she allowed her husband to return to the residence after he made threats against her, and after the court had entered the no-contact order.
{¶ 25} The court's judgment is not against the manifest weight of the evidence. While appellant had made some effort to comply with the case plan, much of her effort began after the motion for permanent custody was filed, which was months after the case plan was filed. Further, she had failed to remedy the conditions which led to the removal of the children, and her compliance was at best sporadic.
{¶ 26} The first, third, and fourth assignments of error are overruled.
 II
{¶ 27} Appellant argues that the guardian ad litem failed to make an independent investigation, and her report was therefore prejudicial to appellant.
{¶ 28} Appellant failed to object to the introduction of the guardian ad litem's report, and therefore has waived any error. Further, while appellant argues that the guardian did not conduct an independent investigation, this is not supported by the guardian's report. The guardian states in her report that she reviewed the entire file for both parents, reviewed the file for the maternal grandparents, participated in all court proceedings, attended semi-annual reviews, conducted home visits with the foster family and the minor children, observed visitation between appellant and the minor children, met with appellant in the home of the maternal grandparents, and viewed the father in his current living circumstances.
{¶ 29} The second assignment of error is overruled.
 V
{¶ 30} Appellant argues that the court erred in granting permanent custody without considering the wishes of the children. The children were age 2 years old and 16 months old at the time of the permanent custody hearing. The court did not err in refusing to consider their wishes as to custody.
{¶ 31} The fifth assignment of error is overruled.
 VI
{¶ 32} Appellant argues that the court erred in granting the motion for permanent custody without following the statutory procedures and making the findings required by R.C.2151.414. Appellant does not specifically point to which procedures the court failed to follow. However, it is apparent from a review of the court's entry that she made findings of fact both specific to the case, and in accordance with the statute. Further, the entry states the court considered the factors under R.C. 2151.414. Judgment entry, February 21, 2002, page five.
{¶ 33} The sixth assignment of error is overruled.
{¶ 34} The judgment of the Tuscarawas County Common Pleas Court, Juvenile Division, is affirmed.
By GWIN, J., HOFFMAN, P.J., and FARMER, J., concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, The judgment of the Tuscarawas County Common Pleas Court, Juvenile Division, is affirmed. Costs to appellant.